IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARGARET A. NEYMAN-REESE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 3:17-cv-00436-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Margaret Neyman-Reese brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), who denied plaintiff's application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

In January 2013, plaintiff applied for DIB. She alleged disability beginning May 31, 2011, due to chronic venous insufficiency ("CVI"), diabetes, back pain, obesity, hearing loss,

and arthritis. Tr. 44-45. Plaintiff's application was denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 44, 56. Following the July 20, 2015 hearing, the ALJ issued a decision on August 27, 2015, finding plaintiff not-disabled within the meaning of the Social Security Act ("the Act"). Tr. 9-19. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## THE COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date of May 31, 2011. *See* 20 C.F.R. § 404.1520(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: obesity, CVI, diabetes, and hearing loss. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c). At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d).

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work . . . i.e., lift/carry twenty pounds occasionally and ten pounds frequently, except . . . [she] can stand and walk 4-5 hours and sit 5-6 hours out of an 8-hour day; can occasionally climb ramps and stairs, crouch, stoop, kneel, and crawl, but no climbing of ladders, ropes, or scaffolds and no balancing on narrow beams; should avoid strong vibration; should do no work in environments with noise level greater than III; and should not have more than occasional telephone interaction with the public and coworkers.

Tr. 13; *see* 20 C.F.R. § 404.1520(e).

At step four, the ALJ concluded that based on her RFC, plaintiff could not perform her past work as a grocery clerk or courtesy clerk. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, the ALJ found that, considering her age, education, work experience, and RFC, plaintiff could perform other jobs which existed in significant numbers in the national economy: namely, mail sorter and storage facility rental clerk. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled.

## DISCUSSION

Plaintiff argues the ALJ's decision involved the following errors: (1) failing to find plaintiff meets Listing 4.11(B); (2) improperly discrediting plaintiff's symptom allegations; (3) according little weight to the medical opinion statement of plaintiff's treating physician; (4) failing to find plaintiff's hand and back impairments "severe" at step two; and (5) improperly relying on vocational expert testimony in identifying other work at step five.

I. *Listing 4.11(B)*

Plaintiff argues that because her CVI condition meets or equals the severity requirements of Listing 4.11(B), the ALJ should have determined she was presumptively disabled at step three. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Instead, the ALJ determined that the objective medical record did not establish any of the criteria for Listing 4.11(B). Tr. 12.

In order to meet Listing 4.11(B), the record must demonstrate: chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and . . . [s]uperficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.11. In terms of the listing, "recurrent" means: "the longitudinal clinical record shows that, within a consecutive 12-month period, the finding(s) occurs at least three times, with intervening periods of improvement of sufficient duration that it is clear that separate events are involved." *Id.* at § 4.00(A)(3)(c). "Persistent" means: "the longitudinal clinical record shows that, with few exceptions, the required finding(s) has been present, or is expected to be present, for a continuous period of at least 12 months, such that a pattern of continuing severity is established." *Id.* at § 4.00 (A)(3)(b).

Plaintiff argues that the objective medical evidence demonstrates she met Listing 4.11(B) during the period from approximately April 21, 2011 to July 22, 2011. Pl.'s Br. 5-6. To clarify the timeline of the medical evidence, a brief recitation of the record is appropriate. As a threshold matter, it appears plaintiff mistakenly attributed the ulceration onset recorded on May 5, 2011, to the date of another chart note, April 21, 2011. *Compare* Pl.'s Br. 5 ("now with venous stasis ulcers" attributed to the date of April 21, 2011) *with* Tr. 391 ("now with venous stasis ulcers" attributed to the date of May 5, 2011). On May 5, 2011, plaintiff was noted to have lesions on her lower legs bilaterally. Tr. 390-91. On the same day, she was sent out for a duplex scan (ultrasound), which revealed "[n]ormal venous examination of the left lower extremity." Tr. 296. By May 18, 2011, ulcers were again observed on plaintiff's legs bilaterally; on the same day, the duplex scan was interpreted as abnormal, revealing "mild deep venous reflux" on both lower extremities.[1] Tr. 315, 378-379. The record reflects that plaintiff's venous stasis ulcers worsened by May 25, 2011, despite treatment, and continued to worsen through June 3, 2011. Tr. 367, 371. A third duplex scan was ordered on June 3, 2011, and completed on June 6, 2011, which showed normal venous activity. Tr. 336-39, 367. On July 13, 2011, a treating physician noted that the duplex results were normal, although plaintiff continued to report swelling. Tr. 360. However, by July 20, 2011, a treating occupational therapist observed that plaintiff's left leg ulcer had healed, and her edema was "under excellent control." Tr. 517. On July 22, 2011, plaintiff reported that her legs were "much improved." Tr. 357.

---

[1] The Court notes that there appears to be a data entry error in the medical record regarding the date of the duplex scan which was ordered on May 18, 2011 (Tr. 379), and also performed on May 18, 2011 (Tr. 315-18). Although the "encounter date" of the chart note indicates May 18, 2011, the body of the scan results suggests the scan was done on June 6, 2011. Tr. 315-18. The June 6, 2011 date, however, corresponds to a subsequent scan, which was ordered on June 3, 2011. *See* Tr. 336-39, 367. In contrast to the May 18, 2011 scan, the June 6, 2011 scan revealed "[n]ormal venous examination of the lower extremities." Tr. 336-339. This is consistent with the State agency's initial determination, which documented mild deep vein reflux on May 18, 2011, and normal venous duplex scan on June 6, 2011. Tr. 49. Understandably, the ALJ mistakenly attributed the May 18, 2011 scan results to the June 6, 2011 scan in his decision. Tr. 14. It appears plaintiff followed the ALJ's misinterpretation of the record. *See* Pl.'s Br. 4. For the reasons articulated in the opinion *infra*, the ALJ's error was harmless.

Page 5 – OPINION AND ORDER

Thus, the record demonstrates that Plaintiff had ulceration from approximately May 5, 2011 until July 20, 2011, contrary to her assertion that the ulceration persisted from April 21, 2011 through July 22, 2011. Accordingly, she does not meet Listing 4.11(B)'s requirement for persistent ulcerations despite treatment for more than three months. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 4.11(B); *see, e.g., Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2014) (all of a listing's criteria must be met in order to establish a listing or a listing's equivalence) (citation omitted).[2] To the contrary, it appears plaintiff's ulceration healed with about two-and-a-half months of diligent treatment including occupational therapy. Although the ALJ erred in identifying the date of the abnormal venous study, and inaccurately asserted that Plaintiff never met *any* of the criteria for Listing 4.11(B), the errors were harmless because the ALJ's step three determination was correct: plaintiff has not presented evidence that she met all of the criteria for the listing.

II. *Step Two Severe Impairments*

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Yuckert*, 482 U.S. 147, 153-54 (1987). The claimant bears the burden of establishing that

---

[2] Raising the issue for the first time in her Reply Brief, plaintiff argues that the record demonstrates "indicia of venous ulcerations" recurred for more than twelve months such that "all" of the listing criteria were met. *See* Pl.'s Reply 5-6. However, plaintiff argues only that she reported incidents of "red patches of skin breakdown, surrounded by flaking or thin, shiny skin, sores, ulcers, wounds, and sometimes puss draining from the wound . . . beginning in July 2010 . . . through July of 2011 and beyond." Pl.'s Reply 6. Such a generalized assertion is not sufficient to establish that all of the criteria were met on a recurrent basis over a twelve-month period. *See Tackett*, 180 F.3d at 1098 (burden of proof is on claimant at step three). Moreover, review of the relevant record does not demonstrate that within a consecutive 12-month period, ulcers occurred at least three times, with intervening periods of improvement of sufficient duration that it is clear that separate events are involved." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(A)(3)(c). For example, although plaintiff had a red patch on her left leg beginning in July 2010 and worsening in August 2010, only edema was noted by August 31, 2010. *See* Tr. 438, 452, 462. In September 2010, the medical provider noted "decreased skin breakdown despite edema." Tr. 433. By October 2010, although venous insufficiency was noted, there were "no open sores or infections." Tr. 423. There is no further evidence of ulceration or skin changes until May 5, 2011. As such, plaintiff demonstrates, at most, two independent incidences of ulceration within the consecutive twelve-month span from July 2010 to July 2011. As such, Plaintiff's alternative argument is unavailing.

Page 6 – OPINION AND ORDER

she has a severe impairment at step two; an impairment is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. §§ 404.1523. When an ALJ fails to identify a severe impairment at step two, but considers nonetheless the functional effect of the omitted impairment at subsequent steps, any error is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ provided a boilerplate statement for finding several of plaintiff's medically-determinable impairments non-severe at step two. Referencing history of back pain, history of knee surgery, and persistent numbness of the hands at once, the ALJ found:

> These conditions, either singly or in combination, have caused only transient and mild symptoms and limitations, are well controlled with treatment, did not persist for twelve continuous months, do not have greater than a minimal limitation on the claimant's physical or mental ability to perform basic work activities, or are otherwise not adequately supported by the medical evidence of record.

Tr. 12. But the ALJ also noted that plaintiff had back pain complaints for 20 years, and acknowledged her history of back pain, and also credited a portion of examining physician Andrea Marshall, D.O.'s assessment that plaintiff was limited from working at heights due in part to back pain. Tr. 12, 16, 470. Based on the ALJ's endorsement of Dr. Marshall's functional limitation alone, it was error for the ALJ to find plaintiff's back condition non-severe.

The Commissioner asserts that the ALJ's step two finding regarding back pain was proper because plaintiff's back condition was not corroborated by medical imaging until three months before the ALJ's decision and therefore the record did not reflect that the condition persisted for twelve months. Def.'s Br. 9. The reason is erroneous; as the ALJ acknowledged, substantial evidence supports plaintiff's history of back complaints, and the only reasonable inference is that the condition identified in the May 2015 lumbar x-ray—"nearly grade 2

anterolisthesis of L4 on L5 [with] bilateral spondylolysis of L4"—was the likely cause of the complaints. Tr. 554; *see also* Tr. 489 (treating physician citing low back pain with neuropathy); Tr. 539 (treating physician citing lower extremity radiculopathy and low back pain in conjunction with May 2015 x-ray showing grade 2 anterolisthesis and disc narrowing).

Further, an ALJ must consider impairments that have lasted, *or are expected to last*, for twelve months or more. 20 C.F.R. § 404.1509 (emphasis added). Thus, even the unlikely assumption that plaintiff's anterolisthesis and spondylosis did not develop until around the time of the May 2015 x-ray, she was not necessarily required to demonstrate that the impairment existed for the prior twelve months if it was expected to persist for twelve months. On this record, given the longitudinal record of back pain in conjunction with plaintiff's obesity, there is every reason to believe that plaintiff's medically-determinable back condition was not going to resolve within twelve months. *See* Tr. 13 (ALJ noting plaintiff's obesity does not meet or equal a listing); *see also*, Tr. 388 (diagnosis of "obesity, morbid (more than 100 lbs over ideal weight or BMI > 40)"); 425 (identifying plaintiff's comorbidities related to obesity, "including GERD, DM, hyperlipidemia, possible OA [osteoarthritis]").

The Commissioner also argues the ALJ's decision not to find the back impairment severe was supported by his finding "no record of treatment for low back pain." Def.'s Br. 9 (citing Tr. 12). The argument is unpersuasive: the record reflects that plaintiff was engaged in a pre-bariatric surgery program to address sciatica, low back pain, and ankle pain. Tr. 419, 422; *see also* Tr. 394 ("patient's goal is to have weight loss surgery to maintain weight loss and improve other health conditions"). Indeed, the connection between plaintiff's attempts at weight loss and her back pain was not lost on the ALJ at the hearing, as he expressed to plaintiff that "it's got to

be hard on your feet, hard on your back, carrying extra weight," and his congratulations that she had recently lost several pounds. Tr. 33.

The Commissioner maintains that even if the ALJ erred in failing to identify all of plaintiff's severe impairments at step two, any error was harmless because the sequential process continued to subsequent steps and incorporated limitations related to plaintiff's non-severe impairments. The Commissioner's argument is persuasive, as substantial evidence supports the proposition that the ALJ considered plaintiff's back impairment at subsequent steps. As noted, in formulating the RFC, the ALJ appeared to adopt Dr. Marshall's opinion that plaintiff was limited from working at heights based in part on her back pain. Tr. 16. Further, although plaintiff disagrees with the conclusion, the ALJ indicated that the opinion of reviewing physician Lloyd Wiggins, M.D., was "somewhat consistent with the claimant's limitations from minor knee and back pain, and hearing loss." *Id.* Accordingly, it appears that despite erroneously finding that plaintiff's back condition did not constitute a severe impairment at step two, the ALJ considered it at subsequent steps, and therefore plaintiff has not demonstrated harmful error. *Lewis*, 498 F.3d at 911.

Plaintiff additionally argues that the ALJ improperly failed to find plaintiff's bilateral carpal tunnel syndrome "severe" at step two. The ALJ addressed the issue, noting that a nerve conduction study in June 2015 demonstrated only "very mild median nerve across the wrist on the right." Tr. 12, 560. Indeed, the nerve conduction study showed no evidence of ulnar or cervical neuropathy of either upper extremity, and no evidence of carpal tunnel syndrome or other neuropathy on the right. Tr. 560. However, even assuming without finding the ALJ erred, any error was harmless because the ALJ considered plaintiff's carpal tunnel syndrome in fashioning the RFC. Specifically, the ALJ appeared to adopt Dr. Marshall's opinion that plaintiff

could handle, finger, and feel without restrictions, which was based on the doctor's examination which demonstrated 5/5 motor strength in the upper extremities, and 5/5 grip strength bilaterally. Tr. 15, 16, 470. As such, plaintiff has not identified harm at step two. *Lewis*, 498 F.3d at 911.

III. *Medical Opinion Evidence*

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; *accord* 20 C.F.R. § 404.1527(d). Accordingly, "the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Moreover, "the opinion of an examining doctor, even if contracted by another doctor, can only be rejected for specific and legitimate reasons." *Id.* at 830-831. "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn*, 495 F.3d at 631.

Plaintiff contends that the ALJ erroneously rejected the assessment of plaintiff's treating physician, Dr. Earhart. The doctor opined that plaintiff is limited to standing for 15 minutes at a time due to edema, and that she is required to elevate her feet periodically to avoid lower extremity swelling, noting a history of leg ulcers. Tr. 488. The doctor assessed an array of marked exertional limitations for a normal workday, including only 30 minutes of standing or

walking in a workday, and 20-30 minutes of sitting at a time for a maximum of one hour per day. Tr. 489. The doctor attributed the exertional limitations to neuropathy in plaintiff's feet and low back pain with radiculopathy. Tr. 490. The doctor additionally noted that plaintiff has weak hands. Tr. 488.

Plaintiff's primary contention is that the ALJ failed to accept or reject Dr. Earhart's opinion that plaintiff would be required to elevate her feet throughout the workday to alleviate pain and swelling. In response, the Commissioner summarizes several reasons the ALJ provided for rejecting Dr. Earhart's opinion overall, and asserts that it was not necessary for the ALJ to "discuss each line" of the doctor's opinion, without specific mention of the foot elevation limitation. Def.'s Br. 13-14. However, although an ALJ may not be required to comment on every component of a doctor's opinion, an ALJ is nevertheless required to provide reasons for rejecting "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

On this record, there is an abundance of evidence that plaintiff's CVI condition requires her to elevate her feet in order to avoid edema, which in the past became so pronounced that it caused ulceration in her lower extremities, as well as abnormal venous functioning. Indeed, the ALJ found that plaintiff's acute flare of CVI in May and June of 2011 was effectively treated with a course of occupational therapy, which involved plaintiff wearing compression stockings and elevating her feet for up to twelve hours per day. *See* Tr. 14, 506, 511-12, 517-18, 523, 533, 538. The chart notes from the occupational therapy sessions further indicate that there is "[h]igh risk for chronic and recurrent wounds if any aspect of care is compromised." Tr. 501. Moreover, plaintiff was repeatedly instructed to keep her feet elevated beginning in 2010, although the

instructions for the frequency and duration of elevation are not consistent throughout the record. *See, e.g.*, Tr. 218-20, 357, 391, 431, 441, 457, 462, 517-18, 533, 538.

Furthermore, the ALJ should have considered and provided legally-sufficient rationales for rejecting the alleged foot elevation limitation set forth by Dr. Earhart, because the ALJ appeared to reject Dr. Marshall's opinion insofar as Dr. Marshall did not properly consider the functional effects of plaintiff's obesity and CVI. Specifically, the ALJ found that plaintiff was more limited than Dr. Marshall believed, "especially in terms of the claimant's exertional ability given her problems with circulation and obesity." Tr. 17.

Accordingly, the Court concludes that the ALJ erred by failing to provide any discussion of Dr. Earhart's foot elevation limitation. Although the record is somewhat mixed on the specific ongoing requirements in terms of frequency and duration of plaintiff's need to elevate her feet, the general limitation is prevalent throughout the record, and the ALJ must provide adequate reasons to either accept or reject such probative evidence. Because the VE testified that a person who was required to elevate their legs for two hours every day[3] would be precluded from maintaining gainful employment, the ALJ's omission of the limitation from the RFC was potentially harmful, because had the ALJ properly considered the limitation, the Court cannot conclude that no reasonable ALJ would have arrived at the same conclusion. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Therefore, remand is required to reevaluate Dr. Earhart's opinion on the issue. *See* Tr. 41-42.

---

[3] Insofar as plaintiff contends that she is required to elevate her feet for at least 30 minutes every two hours, the record is ambiguous on the issue. For example, several chart notes indicate that plaintiff should elevate her feet when she is not working, or when she is able. *See* Tr. 455. Other evidence suggests more frequent elevation is required, particularly when there is "pooled blood" which needs to be drained, presumably during a flare-up such as the incident in May 2011. *See, e.g.*, Tr. 219, 364, 371, 431.

Plaintiff also argues the ALJ erred in rejecting exertional limitations Dr. Earhart assessed regarding plaintiff's back pain and foot neuropathy. The ALJ rejected the functional limitations that Dr. Earhart attributed to plaintiff's back condition, finding that they were unsupported by diagnoses or objective evidence. Tr. 17. Although the Court agrees there is scant evidence of functional limitation due to foot neuropathy, the back condition was diagnosed throughout the longitudinal record, albeit in various forms including sciatica, backache, lower back pain, possible osteoarthritis, and back pain with radiculopathy. Tr. 539. Nonetheless, as noted above, the ALJ appeared to consider plaintiff's back pain in crafting the RFC.

Plaintiff argues that it was error to reject the exertional limitations assessed relative to her back because the May 2015 x-ray provided objective evidence of anterolisthesis. Indeed, to the extent the doctor's opinion was rejected because it was not based on objective evidence, the rationale is somewhat undermined by the May 2015 imaging study. Tr. 554. However, the ALJ provided specific and legitimate reasons to reject Dr. Earhart's opinion that she could only sit for a total of one hour in a workday, despite plaintiff's own testimony that she could sit for up to 90 minutes and endorsed the hobbies of reading, watching television, and playing computer games. Tr. 37, 150, 467. The ALJ also provided a valid reason for rejecting Dr. Earhart's assessed standing and walking limitation of 30 minutes, as it was contradicted by testimony provided by plaintiff's husband. Tr. 17, 171, 489. Further, the ALJ adequately addressed Dr. Earhart's assessed lift/carry limitations by noting that plaintiff had recently been evaluated for neuropathy and did not present any complaints regarding her hands. Tr. 17, 484-86. Moreover, Dr. Marshall found plaintiff had full arm and grip strength in both upper extremities. Tr. 470.

Plaintiff also argues that the ALJ erred in rejecting Dr. Earhart's sit/stand limitations to the extent they were inconsistent with the opinion of reviewing physician Dr. Eder, who opined

that plaintiff could perform light work. Although the ALJ purported to accord Dr. Eder's opinion "great weight," he also indicated that "the limits are reduced based on testimony of continued swelling in the legs and [plaintiff's] diabetic condition requiring special foot care." Tr. 16. Moreover, the ALJ appeared to accord weight to Dr. Eder's opinion because it was consistent with the consultative examination of Dr. Marshall, despite previously rejecting Dr. Marshall's exertional assessment because Dr. Marshall failed to consider all of plaintiff's limitations. As such, the ALJ's finding was internally inconsistent. However, because the ALJ provided other valid reasons to reject Dr. Earhart's sit/stand/walk and lift and carry limitations, any error was harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

On balance, although the ALJ permissibly found one of Dr. Earhart's exertional limitations conflicted with plaintiff's ADLs and testimony, the ALJ's other rationales did not meet the requisite specific-and-legitimate legal standard. Accordingly, the ALJ on remand must reevaluate the foot elevation limitation assessed by Dr. Earhart. *See Dale v. Colvin*, 823 F.3d 941, 945-46 (9th Cir. 2015) (affirming in part and rejecting in part an ALJ's evaluation of a medical source opinion).

III. *Subjective Symptom Allegations*

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Summarizing plaintiff's allegations of functional limitation, the ALJ noted that following plaintiff's medical issues in May 2011, her "venous insufficiency has since resolved, but she continues to have swelling in her lower extremities." Tr. 13. The ALJ further found that plaintiff was able to perform a range of daily activities despite her allegations of venous insufficiency and back pain, and that her hobbies suggested she was not as limited in her ability to sit for lengths of time as she alleged. Tr. 15-16. The ALJ also indicated plaintiff's diabetes mellitus was well-controlled on medication, that her hearing loss was "not that limiting," and implied that he questioned the veracity of plaintiff's assertion that she elevates her legs for two-to-three hours per day. *Id.*

Review of the hearing transcript reflects that the ALJ mischaracterized plaintiff's statements and appeared to manufacture an inconsistent statement where none existed. When the ALJ asked plaintiff if she wore compression stockings, she responded affirmatively, and was explaining what she did to treat swelling when the ALJ interrupted her, asking "it's better if you stay off your feet . . . if you're not on your feet all day?" Tr. 35. Plaintiff again responded affirmatively, and the ALJ moved on to another topic. *Id.* During cross-examination, plaintiff's attorney at the hearing asked what else she did besides wearing compression stockings to treat CVI, and plaintiff testified that her doctors recommended that she elevate her legs "[f]or every two hours that [she] was on [her] legs." Tr. 37. The ALJ impugned plaintiff's testimony because

Page 15 – OPINION AND ORDER

"claimant did not mention elevating her legs when under questioning," but the ALJ declined to acknowledge that he interrupted her explanation, and moreover, her initial explanation of staying off her feet is not inconsistent with elevating her legs. Either way, the rationale is not clear and convincing.

Similarly, although plaintiff testified to her ability to perform a number of ADLs including cooking meals, doing laundry, shopping, and assisting her legally-blind husband, the ALJ glossed over two important facts: first, that plaintiff indicated she requires breaks for all of her ADLs, and second, that plaintiff and her husband live in an assisted-living facility because he is legally blind. *See* Tr. 147-51, 392, 434. For example, although plaintiff indicated that she cooks meals, she only does so two-to-three times per week, because "meals are included with the rent." Tr. 157, 416.

On the other hand, the ALJ did not err in determining plaintiff provided inconsistent testimony about her ability to sit. For example, although plaintiff wrote in 2013 that she can only sit for 20 minutes before she needs to change positions, she testified at the hearing in 2015 that she can sit for 60-90 minutes before she must move. *Compare* Tr. 37 *with* Tr. 150.

The ALJ also found plaintiff's symptom allegations were belied by the fact that she did not leave her job for reasons related to her impairments, because she was fired for taking money that had been abandoned in a change machine at her place of employment. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). This rationale is not clear-and-convincing: at the time of plaintiff's dismissal, she was on medical leave and able to tolerate three hours of work with two fifteen-minute breaks. Tr. 506. Moreover, the record reflects that immediately prior to plaintiff's termination, her employer apparently indicated she could work on a modified schedule in order to accommodate her limitations. *Id.* While an ALJ may impugn symptom testimony

where a plaintiff left their job for a reason other than their impairment, here, the record is unequivocal that at the time of plaintiff's termination, she was not able to work a full-time schedule due to her impairments.

The ALJ allowably determined that plaintiff's allegations of impairment due to hearing loss and diabetes were undermined by effective conservative treatment. Although plaintiff alleges significant hearing loss, the ALJ noted that she was able to communicate effectively at the hearing and during the consultative examination, even without hearing aids. Tr. 15, 470. Moreover, the ALJ found hearing loss to be a severe impairment at step two, accounted for some hearing limitation in the RFC. Regarding diabetes, the ALJ appropriately determined it was well-controlled with oral medications. Tr. 14, 473. Although plaintiff proposes a different interpretation of the findings, the ALJ's was rational and supported by the record. *Edlund*, 253 F.3d at 1156.

Finally, the ALJ found that plaintiff's CVI improved with conservative treatment. Tr. 15. While plaintiff argues that "there is no evidence her [CVI] improved," the record unequivocally reflects that her condition improved following the acute flare in May 2011. *See, e.g.*, Tr. 336 (normal venous examination of June 2011), 354 ("legs are much improved") 511 (wounds healed, excellent control of edema). Moreover, plaintiff testified that her CVI improved. Tr. 30 ("[t]he venous insufficiency part of it has cleared up"). Nonetheless, to the extent the ALJ determined plaintiff's CVI condition has completely abated, the finding is not clear and convincing, as the record reflects that plaintiff continues to suffer edema, and numerous records indicate that CVI is a lifelong condition, albeit one that can be managed with proper care. *See* Tr. 219 ("CVI is a lifelong condition. Flare-ups of stasis dermatitis and stasis ulcers may come and go), 497 (reference to "lifelong" management of circulation).

For the aforementioned reasons, the ALJ's credibility assessment was not free of legal error, despite the ALJ's valid rationales for rejecting plaintiff's testimony as to plaintiff's allegations regarding hearing loss, diabetes, and her ability to sit. Nevertheless, although an ALJ's credibility assessment may be upheld even where some of the rationales provided for rejecting testimony are erroneous so long as at least one reason is valid, here the Court declines to uphold the ALJ's overarching finding because the errors render the ALJ's decision invalid. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (declining to affirm credibility finding based on a single valid rationale in light of two invalid rationales) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Because the ALJ failed to provide legally-sufficient reasons to reject plaintiff's testimony regarding the severity and functional limitation of her CVI condition, remand is required, particularly considering the ALJ's failure to address plaintiff's alleged need to elevate her feet, and the ALJ's erroneous rejection of treating physician Dr. Earhart's opinion on the issue. *Id.*

IV.  *VE Testimony and Step Five*

Plaintiff argues that the ALJ erred by failing to resolve an apparent conflict between the VE testimony and the *Dictionary of Occupation Title*'s descriptions of the jobs identified at step five. Accordingly, argues plaintiff, remand is required. However, because the Court has already determined that this case requires remand for the aforementioned reasons, the Court does not reach the issue of the apparent conflict at step five.

V.  *Remand for Further Proceedings*

The uncontradicted record in this case reflects that plaintiff has a lifelong CVI condition in addition to other severe impairments. The ALJ failed to adequately consider credible evidence that plaintiff is required to elevate her feet every day in order to alleviate or avoid extreme

symptoms. In so doing, the ALJ erred by failing to provide legally sufficient reasons to disregard portions of the opinion of plaintiff's treating physician, and by failing to provide clear-and-convincing rationales to disregard plaintiff's symptom allegations. Thus, the first prong of the Ninth Circuit's credit-as-true doctrine is met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted). However, the record requires additional development regarding the prescribed limitations related to plaintiff's CVI condition; specifically, the record is equivocal about the frequency and duration that she is required to elevate her feet, if at all. As such, the Court does not reach the third prong of the inquiry. *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015).

## CONCLUSION

The Commissioner's decision is REVERSED and this case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 13th day of March 2018.

Ann Aiken
United States District Judge